UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

DONALD BLUME,

                          Petitioner,

        -against-

DANIEL MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility,

                         Respondent.

------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 Civ. 4310 (KMK)(PED)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

## I. INTRODUCTION

On November 17, 2009, a Sullivan County jury convicted petitioner Donald Blume ("petitioner" or "defendant") of the crimes of second degree robbery (two counts) (N.Y. Penal Law §§ 160.10 (1), (2)(a)) and second degree criminal possession of a weapon (N.Y. Penal Law § 265.03(3)).  He was sentenced on May 5, 2010 to determinate, concurrent terms of imprisonment of fifteen years plus five years post-release supervision ("PRS") on the robbery counts and a determinate term of imprisonment of seven years plus five years PRS on the weapon possession count.  The weapon possession sentence was ordered to run consecutively to the robbery sentences, for an aggregate prison term of twenty-two years plus ten years PRS.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  This petition is before me pursuant to an Order of Reference entered October 3, 2013 (Dkt. #8).  For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

## II. BACKGROUND[1]

A. The Crimes

During the early morning of April 27, 2009, petitioner and a group of friends–Fred Pagan, Lynn Thomas, Toni DiLauro, Ryan Ward and Angelo Rivera–wanted to buy crack cocaine but had no money to do so.  Petitioner, Pagan and Thomas hatched a plan to rob taxi driver Richard Olsen, with whom Thomas was acquainted.  At approximately 3:30 a.m., Thomas called Olsen and asked him to pick her up at the Hemlock Ridge Apartments in Livingston Manor.  Rivera drove the entire group in his car to the meeting place and parked in a nearby lot. Petitioner, Pagan, Thomas and Ward exited the car; DiLauro and Rivera stayed behind.

Olsen arrived at approximately 3:50 a.m.  Thomas got into the backseat of the taxi; Pagan told her to move over and followed her into the backseat.  As Olsen observed Pagan in the backseat, petitioner opened the driver's door.  Olsen turned toward the driver's door and Pagan (from the backseat) punched him in the face.  Petitioner and Pagan began repeatedly punching Olsen in his face and chest.  Olsen, who was licensed to carry a firearm, grabbed the gun he kept in his taxi and tried to fire it, but it misfired.  Thomas screamed that Olsen had a gun; as petitioner and Olsen wrestled for control of the firearm, Ward opened the right front door and joined in the attack.  Petitioner eventually seized the gun and pulled Olsen out of the car and onto the ground.  Petitioner struck Olsen in the head with the pistol.  The attackers stole Olsen's wallet and an envelope containing eighty-eight dollars, then fled.  Olsen got into his taxi and

_____

[1] Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. #1), respondent's Declaration in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Decl.") (Dkt. #9), respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Mem.") (Dkt. #10) and petitioner's Traverse ("Reply") (Dkt. #13).

called 911.

Petitioner, Pagen, Thomas and Ward returned to Rivera's car. Petitioner waved the gun around and bragged he had pistol-whipped Olsen. Rivera threw his keys and walked away. The rest of the group entered the vehicle (with Thomas in the driver's seat) and drove to Fiddle's gas station in Parksville. Ward pumped gas while petitioner went inside to pay for it. Surveillance cameras recorded petitioner entering the store shortly after 4:00 a.m. After the group left the gas station, petitioner and Pagan got out of the car at a nearby stop sign. Petitioner maintained possession of Olsen's gun, money and wallet. Thomas and DiLauro exited the vehicle a short time later; Ward drove off with the car.

At approximately 4:30 a.m., Liberty Police Sergeant McAffee spotted Ward driving the vehicle, knew his license was suspended, stopped the car and took Ward into custody. During an inventory search of the vehicle, police recovered a .38 caliber bullet from underneath the driver's seat.

New York State Police interviewed Olsen that morning. They reviewed recent calls to his cell phone and identified two from Thomas (at 3:25 a.m. and 3:35 a.m.), which led investigators to her. Petitioner and Pagan were arrested on April 28, 2009.

B. Preliminary Hearing

On May 1, 2009, petitioner and co-defendant Pagan appeared in the Town of Rockland Justice Court (Madison, J.) for a preliminary hearing. See Transcript of Preliminary Hearing, Dkt. #11, at 1-39.[2] Pagan's counsel (Mr. Proyect) was present but petitioner's counsel (Mr.

---

[2] Docket #11 encompasses the complete state court transcript of proceedings in petitioner's underlying criminal case, from May 1, 2009 through petitioner's sentencing on May 5, 2010. Respondent did not provide a hard copy of the transcript to the court. Accordingly, all page number citations to "Dkt. #11" herein correspond to pages as they appear in the Electronic

Ferrera) failed to appear. Id. at 2-3. The prosecution and Pagan's counsel stated they were ready

to proceed with the preliminary hearing with respect to Pagan only; the court agreed to proceed

in that manner. Id. Petitioner remained in the courtroom throughout Pagan's preliminary

hearing, during which Richard Olsen and Investigator Timothy Dowling testified. Id. at 3-32.

At the conclusion of the hearing, the court mistakenly stated:

> I find there's, uh, reason to believe the felony was committed, and that
> Donald Blume and Frederick Pagan are the ones who committed the felony, and
> will hold them for Grand Jury action.

Id. at 33. The prosecutor (Mr. Farrell) immediately corrected the court's statement:

| MR. FARRELL: | Well, I, I would ask that you give Mr. Blume the opportunity, if his attorney wishes to – |
|---|---|
| THE COURT: | If he want to – |
| MR. FARRELL: | – to have a hearing. |
| THE COURT: | – attorney or give him a copy of the disk if he wants.  Or we'll have him come in, we'll have another preliminary on that. |
| MR. FARRELL: | That's fair. |
| THE COURT: | Okay.  Then this will – |
| MR. FARRELL: | Because he, he wasn't represented by counsel.  I don't want him to be – |
| THE COURT: | Well, yeah.  That, too. |
| MR. FARRELL: | – to be prejudice[d].  So if Mr. Ferrera wants a hearing, we'll certainly set that up. |
| THE COURT: | We'll find out if he wants the hearing.  If he want[s], if he wants it then.  We'll have – |

---

Case File ("ECF").

MR. BLUME:          Well, I, I would like to have a hearing, Your Honor.

THE COURT:          You talk to your attorney, and we certainly will have it.

Id. at 33-34.

Later that day, petitioner's counsel wrote a letter to the court explaining his absence:

> I visited my client around 4:15 p.m. this afternoon and learned that he was in court for a preliminary hearing today. I apologize for not being present, but the fax I received scheduled the matter for May 7, 2009 at 2:30 p.m. . . .
>
> I was able to reach Mr. Proyect at about 5:00 p.m. today. Based upon that conversation, I do not believe either Mr. Farrell or the court considers my client to have had a preliminary hearing.
>
> I will try to contact Mr. Farrell on Monday morning. Until then, however, I wish to confirm that my client's case remains on the court's calendar for May 7, 2009 at 2:30 p.m.

Resp. Decl., Exh. H, at RA-3.[3]  Petitioner was indicted by a grand jury on May 6, 2009.  Exh. A, at 5, 9.[4]

C. _Wade_[5] Hearing

On or about May 15, 2009, the prosecution filed a Notice of Intent to Offer Identification

---

[3] Hereinafter, all citations to "Exh. ___" refer to exhibits attached to respondent's Declaration in Opposition.  Respondent has provided the court with a hard copy of the Declaration in Opposition, attached to which are individually tabbed Exhibits A-P.  Respondent's Declaration in Opposition appears on ECF as Docket #9; although Exhibits A-P are also accessible on ECF within Docket #9, they have been filed in blocks (Attachments 1-9) which do not correspond to the tabulated exhibits.  Because the ECF version of Exhibits A-P are not organized in readily-usable fashion, citations to page numbers following "Exh. ___" herein refer to page numbers as they appear in the hard copy.

[4] Indictment #98-2009, filed on May 13, 2009, charged petitioner, Pagan and Thomas with two counts each of second degree robbery and one count each of second degree criminal possession of a weapon.  Exh. A, at 6-8.

[5] United States v. Wade, 388 U.S. 218 (1967).  "The purpose of a _Wade_ hearing is to determine before the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification."  Lynn v. Bliden, 443 F.3d 238, 248 (2d Cir. 2006) (citations omitted).

Evidence pursuant to New York Criminal Procedure Law ("CPL") § 710.30, which stated: "On

April 27, 2009 at about 6:45 PM, Richard Olsen was shown three different photo arrays by the

New York State Police. [Olsen] identified Lynn Thomas and Frederick Pagan as participants in

the robbery. Olsen was unable to identify Donald Blume." Exh. A, at 21. On September 18,

2009, the Sullivan County Court (LaBuda, J.) conducted a *Wade* hearing with respect to Pagan's

and Thomas's objections to the admissibility of Olsen's pretrial identifications of them from

photo arrays. Dkt. #11, at 108, 120-59. Prior to the start of the hearing, the court stated:

> Let the record reflect all three defendants are in the courtroom and the
> victim of the robbery is also present, and we'll conduct a hearing with respect to
> Ms. Thomas and Mr. Pagan. With respect to Mr. Blume, there is no Wade
> hearing because the witness is not able to identify that defendant and the People
> will not be asking the witness to identify that defendant.

Id. at 121. The prosecution affirmed it would "[a]bsolutely not" ask Olsen to identify petitioner;

the hearing proceeded without objection from petitioner's counsel. Id. at 121-31.[6]

D. Trial

Following jury selection on November 6, 2009, the case proceeded to trial on November

10, 2009. On November 17, 2009, the jury convicted petitioner of two counts of second degree

robbery and one count of second degree criminal possession of a weapon. He was sentenced on

May 5, 2010 to determinate, concurrent terms of imprisonment of fifteen years plus five years

PRS on the robbery counts and a determinate term of imprisonment of seven years plus five

years PRS on the weapon possession count. The weapon possession sentence was ordered to run

consecutively to the robbery sentences, for an aggregate prison term of twenty-two years plus ten

---

[6] Petitioner was represented at the hearing by John Kelly, Esq., who replaced Mr. Ferrara
as petitioner's assigned counsel (due to a conflict of interest) on or about May 19, 2009. Exh. A,
at 24-30.

years PRS.

E. Direct Appeal

Petitioner, by and through counsel, timely appealed his conviction to the Appellate Division, Third Department on the following grounds: (1) corroborative evidence from non-accomplices was insufficient to support his conviction; (2) the trial court failed to properly instruct the jury regarding accomplice testimony; (3) petitioner was denied his right to a fair trial due to spoliated evidence; (4) petitioner's sentence was harsh and excessive; and (5) the trial court failed to limit petitioner's sentence in accordance with New York Penal Law ("NYPL") § 70.25(3).  Exh. F., at 14-24.  On or about August 11, 2011, petitioner filed a *pro se* supplemental brief wherein he argued:  (1) his right to counsel was violated because he was not represented by counsel at the preliminary hearing; (2) the trial court improperly allowed Olsen to observe petitioner at the preliminary hearing, without petitioner's counsel present, and gather a physical description of petitioner which Olsen related during his trial testimony; (3) the prosecution failed to provide pretrial notice of Olsen's description of petitioner; and (4) the trial court failed to conduct a *Wade* hearing with respect to Olsen's "identification" of petitioner. Exh. G, at 2-6.  By Memorandum and Order entered February 9, 2012, the Third Department affirmed petitioner's judgment of conviction.  People v. Blume, 92 A.D.3d 1025, 937 N.Y.S.2d 724 (3d Dep't 2012).  Petitioner, by and through counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, wherein he sought review of all of the claims raised in his appellate brief and supplemental *pro se* brief, *except* for his claim that the trial court failed to limit his sentence in accordance with NYPL § 70.25(3).  Exh. K.  The Court of Appeals denied petitioner leave to appeal on June 18, 2012.  People v. Blume, 19 N.Y.3d 957, 973 N.E.2d 207, 950 N.Y.S.2d 109 (Table) (2012).

F.  Collateral Proceeding

On or about January 31, 2013, petitioner filed a motion to set aside his sentence pursuant

to CPL § 440.20.  Exh. N.  Specifically, petitioner argued that the acts underlying his convictions

for robbery and criminal possession of a weapon were not separate and distinct and, therefore,

his sentences must run concurrently (not consecutively, as imposed) pursuant to NYPL §

70.25(2).  Id. at 2-5.[7]  By Decision and Order dated March 1, 2013, the Sullivan County Court

(LaBuda, J.) denied petitioner's motion.  Exh. P.  Petitioner did not seek leave to appeal the

denial of his CPL § 440.20 motion to the Appellate Division.

G.  The Instant Habeas Petition

Petitioner timely[8] filed the instant Petition for a Writ of Habeas Corpus on or about

February 16, 2012,[9] wherein he seeks habeas review of the following claims: (1) his right to

_____

[7]  Pursuant to NYPL § 70.25(2), "[w]hen more than one sentence of imprisonment is
imposed on a person for two or more offenses committed through a single act or omission . . .
the sentences . . . must run concurrently."  On direct appeal, petitioner argued that the trial court
failed to limit his sentences in accordance with NYPL § 70.25(3), which provides: "Where
consecutive definite sentences of imprisonment *are not prohibited by subdivision two of this
section* and are imposed on a person for offenses which were committed as parts of a single
incident or transaction, the aggregate of the terms of such sentences shall not exceed one year."
N.Y. Penal Law § 70.25(3) (emphasis added); Exh. F., at 23-24.  The Appellate Division rejected
that claim:

>  Moreover, we note that defendant's reliance upon Penal Law § 70.25(3) is
>  misplaced, as that provision deals with alternative definite sentences imposed
>  under Penal Law § 70.00(4) for class D and E felonies, not–as is the case
>  here–determinate sentences imposed under Penal Law § 70.02(b) for class C
>  violent felonies.

Exh. J., at 5.

[8]  See 28 U.S.C. § 2244(d)(1).

[9]  The date on which petitioner placed the instant Petition in the prison mailing system.
See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v.
Lack, 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

counsel was violated because he was not represented by counsel at the preliminary hearing; (2)

the trial court failed to conduct a *Wade* hearing with respect to Olsen's "identification" of

petitioner; and (3) the trial court illegally sentenced him to consecutive, rather than concurrent,

sentences in violation of NYPL § 70.25(2).  Petition, at 2-5.[10]

### III.  APPLICABLE LAW

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a habeas corpus action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas

---

[10] To the extent petitioner asserts a claim in his reply that his indictment was defective, he did not raise that claim in his petition and, thus, this court may decline to review it.  See Ennis v. Artus, No. 09 Civ. 10157, 2011 WL 3585954, at *19 (S.D.N.Y. Aug. 12, 2011) (citing cases) (Report and Recommendation), *adopted by* 2012 WL 3957046 (S.D.N.Y. Sept. 10, 2012).  In any event, "[a] challenge to the sufficiency of a state indictment is not cognizable on habeas review unless the indictment falls below constitutional standards."  Cromwell v. Smith, No. 13 Civ. 29, 2014 WL 1280287, at *12 (S.D.N.Y. Mar. 25, 2014) (quotation and citation omitted).  An indictment satisfies minimum constitutional requirements if "it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."  United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).  Here, the indictment incorporated the language of New York's second degree robbery and second degree criminal possession of a weapon statutes, and specified the approximate time and location of the alleged crimes.  See Exh. A, at 6-8; N.Y. Penal Law §§ 160.10(1), 160.10(2)(a), 265.03(3).  Thus, the indictment did not fall below the minimal constitutional threshold.  See DeVonish v. Keane, 19 F.3d 107, 109 (2d Cir. 1994) (indictment that "tracked the language of the New York burglary statute, and specified the approximate time and place of the alleged crime" was constitutionally sufficient).  Accordingly, any defective indictment claim fails to state a cognizable basis for habeas relief.

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), are summarized below.

A.  Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States is
> removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized by the
> Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed

application for state post-conviction relief, or other collateral review, of a claim raised in the

petition.  See id. § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling,

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S.

408, 418 (2005)).  "The term 'extraordinary' refers not to the uniqueness of a party's

circumstances, but rather to the severity of the obstacle impeding compliance with a limitations

period."  Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is

not enough for a party to show that he experienced extraordinary circumstances.  He must

further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent. See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a

particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007)

(citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following

"guideposts" for evaluating the adequacy of the state procedural bar in the context of "the

specific circumstances presented in the case, an inquiry that includes an evaluation of the

asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and Recommendation), adopted by 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[11]

D.  Standard of Review

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v.

---

[11] Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed

subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the

petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA

deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the

merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-

55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state

prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2)

reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

     A state court's decision is "contrary to" clearly established Federal law if (1) "the state

court applies a rule that contradicts the governing law set forth [by the Supreme Court of the

United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from

[Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  "Clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to

the dicta, of [Supreme Court] decisions.  And an 'unreasonable application of' those holdings

must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice." White

v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "The

critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if,

and only if, it is so obvious that a clearly established rule applies to a given set of facts that there

could be no 'fairminded disagreement' on the question." Id. at 1706-07 (quoting Harrington v.

-15-

Richter, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

## IV. ANALYSIS

A. Claim One: Right to Counsel

As his first claim for habeas relief, petitioner contends his right to counsel was violated because he was not represented by counsel at the preliminary hearing. Petitioner exhausted this claim on direct appeal; the Appellate Division addressed it in conjunction with petitioner's "remaining contentions" which were "examined and found to be lacking in merit." Blume, 92 A.D.3d 1025, 1028, 937 N.Y.S.2d 724. The Appellate Division's written decision denying the claim on its merits represents the last-reasoned state court decision to address petitioner's deprivation of counsel claim. Accordingly, on habeas review, I must apply the deferential AEDPA review standard in evaluating petitioner's deprivation of counsel claim. See Sellan, 261 F.3d at 312.

"The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81 (2004). A preliminary hearing to determine whether there is sufficient evidence against the accused to warrant presenting his case to a grand jury constitutes a "critical stage" at which the right to

counsel attaches. See Coleman v. Alabama, 399 U.S. 1, 8-10 (1970) ("Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution."). Here, the record clearly reflects that the preliminary hearing on May 1, 2009 was conducted *only as to defendant Pagan.* Dkt. 11, at 1-39. Petitioner's assigned counsel (who mistakenly thought Blume's preliminary hearing was scheduled for May 7, 2009) subsequently contacted the court to confirm petitioner's preliminary hearing was still calendared for May 7th. Resp. Decl., Exh. H, at RA-3. Petitioner's preliminary hearing did not take place; he was indicted by a grand jury on May 6, 2009. Exh. A, at 5, 9.[12]

Petitioner contends, however, that Pagan's preliminary hearing constituted an adversarial judicial proceeding *as to petitioner* because Olsen (the victim) was allowed to observe petitioner during Pagan's proceeding and, thus, it was "tantamount to an official show up." Reply, at 12. Contrary to petitioner's mischaracterization, Olsen was not asked during Pagan's preliminary hearing–or anytime thereafter, including at trial–to identify petitioner as one of the assailants. Nothing in the record suggests that petitioner suffered any adverse consequence in the course of the criminal proceedings against him as a result of his presence as a spectator at Pagan's preliminary hearing. Petitioner, therefore, fails to demonstrate he was deprived of his right to counsel due to his counsel's absence at Pagan's preliminary hearing. Thus, there is no basis to conclude that the Appellate Division's rejection of petitioner's deprivation of counsel claim was either contrary to, or an unreasonable application of, federal law. Accordingly, I conclude and respectfully recommend that petitioner is not entitled to habeas relief on his first claim.

---

[12] To the extent petitioner complains he was indicted without "the benefit of a preliminary hearing, as promessed [sic]," Reply at 12, "[t]here is no federal constitutional right to a preliminary hearing." Caswell v. Racetti, No. 11-CV- 0153, 2012 WL 1029457, at *5 (W.D.N.Y. Mar. 26, 2012) (quotation and citations omitted).

B. Claim Two: Denial of *Wade* Hearing

As his second claim for habeas relief, petitioner asserts that he was deprived of due process because the trial court failed to conduct a *Wade* hearing with respect to Olsen's "identification" of petitioner. Petitioner presented this argument on direct appeal; the Third Department rejected it on procedural grounds:

> As to the asserted <u>Wade</u> violation, County Court indicated that it would not be conducting a <u>Wade</u> hearing with respect to defendant because, as noted previously, the victim was unable to identify defendant as one of his attackers and the People did not intend to pursue any such identification testimony at trial. Defendant voiced no objection to County Court's ruling and, therefore, his present argument is unpreserved for our review (<u>see</u> CPL 470.05(2)).

Exh. J, at 3 (citation omitted).

New York's contemporaneous objection rule (codified at section 470.05(2) of New York's Criminal Procedure Law) "provides that, with a few exceptions not applicable here, New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." <u>Downs v. Lape</u>, 657 F.3d 97, 103 (2d Cir. 2011). The Second Circuit has consistently recognized New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. <u>See</u>, <u>e.g.</u>, <u>Whitley v. Ercole</u>, 642 F.3d 278, 292 (2d Cir. 2011); <u>Brown v. Ercole</u>, 353 F.App'x 518, 520 (2d Cir. 2009); <u>Garvey</u>, 485 F.3d at 720; <u>Garcia v. Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999) (federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules"). Further, the Appellate Division's application of CPL 470.05(2) in this case was not exorbitant. As to the first *Cotto* consideration, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court–the violation only first occurred when defendant raised an argument on appeal that he

had not raised earlier." See Garvey, 485 F.3d at 719. Indeed, perfect compliance with CPL

470.05 would have given the trial court an opportunity to address head-on the issues petitioner

now raises. The second *Cotto* consideration weighs against petitioner because New York case

law requires compliance with the contemporaneous objection rule under the specific

circumstances presented here. See, e.g., People v. Garcia, 79 A.D.3d 1248, 1251, 911 N.Y.S.2d

723, 726 (3d Dep't Dec. 9, 2010); People v. Belle, 74 A.D.3d 1477, 1480, 902 N.Y.S.2d 258,

261 (3d Dep't June 10, 2010); People v. Hernandez, 44 A.D.3d 1072, 844 N.Y.S.2d 398 (2d

Dep't Oct. 30, 2007). The third *Cotto* consideration similarly disfavors petitioner because, just

as in *Garvey*, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but

rather "the very essence" of the rule. See Garvey, 485 F.3d at 720. Moreover, petitioner's

compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court

could have developed a factual record supporting its decision[s] that could then properly be

reviewed on appeal." See Whitley, 642 F.3d at 290.

      Because there is an adequate and independent finding by the Appellate Division that

petitioner procedurally defaulted on the *Wade* claim he presently asserts as grounds for habeas

relief, petitioner must demonstrate in his habeas petition "either cause and actual prejudice, or

that he is actually innocent." Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) (quotation

and citations omitted). Although petitioner makes no attempt to demonstrate his actual

innocence, he argues that sufficient cause and prejudice exist to overcome the procedural bar and

obtain habeas review of his *Wade* claim. Specifically, petitioner asserts: (1) he did not object

when the trial court announced that the *Wade* hearing would be held only as to Thomas and

Pagan because he relied upon the prosecution's assurance that Olsen would not identify

petitioner at trial as one of the attackers; (2) at trial, "in a surprise move," the prosecution

-19-

elicited Olsen's description of his second attacker (red hoodie, olive complexion, bald with a big chest); (3) prior to the preliminary hearing, Olsen was unable to identify petitioner from a photo array and described the second attacker only as a man in a red hoodie; and (4) Olsen's enhanced description of the second attacker at trial was based upon his observation of petitioner during the preliminary hearing. Reply, at 3-4, 7-8. Petitioner sums up his cause and prejudice argument as follows: "If petitioner was aware that the prosecution would later elicit an impermissible 'description' from the witness, he would have objected to the denial of the *Wade* hearing in [an] attempt to suppress it." Id. at 8.

Petitioner's attempt to demonstrate cause and prejudice is inextricably intertwined with the merits of his *Wade* claim–and both fail. On direct examination, Olsen described the man who attacked him from the driver's side as a "gentleman in a red sweatshirt, bald, olive complexion, big chest"; although Olsen identified Pagan as the attacker in the backseat, he was unable to identify the man who attacked him from the driver's side. Dkt. 11, at 48-51, 60. Because Olsen made no pretrial or in-court identification of petitioner as his assailant, there was no basis for the trial court to conduct a *Wade* hearing. Petitioner's argument to the contrary improperly conflates "description" with "identification." Petitioner also fails to demonstrate that he was prejudiced by Olsen's description at trial which, according to petitioner, was generated by Olsen's observation of petitioner at the pretrial hearing. On cross-examination, petitioner's counsel challenged the accuracy of Olsen's description of the individual who attacked him from the driver's side and reaffirmed Olsen's inability to identify petitioner. Id. at 122-24, 133-35. Petitioner's counsel reiterated those points on summation. Id. at 119-20, 126-27. In sum, petitioner has not alleged the cause and prejudice necessary to overcome his forfeiture of the *Wade* claim, nor has he alleged he is actually innocent or that the court's failure to consider the

-20-

claim would result in a fundamental miscarriage of justice. Accordingly, I conclude, and respectfully recommend, that petitioner's procedural default bars federal review of his second claim for habeas relief[13] and, in any event, that claim is meritless.[14]

## C. Third Claim: Consecutive Sentences

As his third (and final) claim for habeas relief, petitioner alleges that the trial court illegally sentenced him to consecutive sentences in violation of NYPL § 70.25(2). Petitioner specifically contends that the acts underlying his convictions for robbery and criminal possession of a weapon were not separate and distinct and, therefore, NYPL § 70.25 mandates the imposition of concurrent sentences. Petitioner presented this argument to the trial court, as the grounds for his CPL § 440.20 motion to set aside his sentence. The County Court denied the motion:

> In the instant matter, Defendant was represented by counsel throughout the proceedings, including sentencing. Count One of the Indictment charged Defendant with robbery in which Defendant forcibly stole property from the victim while aided by another. This charge did not require possession of a weapon. Count Two of the Indictment charged Defendant with robbery in which Defendant forcibly stole property from the victim and caused physical injury to the victim during the course of the robbery or in immediate flight therefrom. This charge did not require possession of a weapon. Count Three of the Indictment charged Defendant with criminal possession of a loaded weapon, not at

---

[13] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

[14] I also note that petitioner's *Wade* claim is a matter of state law and, therefore, not cognizable on habeas review unless the denial of his *Wade* hearing rendered petitioner's trial fundamentally unfair. See Andrews v. LeClaire, 709 F. Supp.2d 269, 278-79 (S.D.N.Y. May 4, 2010). As discussed above, there is no basis to conclude that petitioner's trial was fundamentally unfair or that he was prejudiced by the trial court's denial of a *Wade* hearing. Accordingly, notwithstanding my discussion of the merits of petitioner's *Wade* claim in conjunction with my analysis of his cause and prejudice argument, petitioner's *Wade* claim is not reviewable by this court.

> Defendant's home or business.  Defendant stole the victim's firearm during the
> commission of the robbery.  He remained in possession of the firearm after the
> robbery ended.
>
> As the People correctly point out in their affirmation in opposition, "The
> forcible stealing of the victim's money and the defendant's possession of a loaded
> weapon were separate and distinct acts for which he was properly sentenced to
> consecutive sentences."  Although Defendant's criminal possession of the loaded
> firearm was a result of his forcibly stealing the firearm from the victim during the
> robbery, the acts of the robbery and subsequent possession of the firearm were
> separate and distinct.  Defendant's arguments are without merit, and this Court
> finds no reason to vacate the previously imposed lawful, consecutive sentences.

Exh. P, at 2.  Petitioner did not seek leave to appeal the denial of his CPL § 440.20 motion to the

Appellate Division.  Petitioner's third claim is, therefore, unexhausted.  See Baldwin, 541 U.S. at

29.

Petitioner's sentencing claim may not be "deemed" exhausted because he has remedies

available in state court.  Specifically, if petitioner reasserted this claim in a second CPL § 440.20

motion,

> the court *may deny* such a motion when the ground or issue raised thereupon was
> previously determined on the merits upon a prior motion or proceeding in a court
> of this state, other than an appeal from the judgment, or upon a prior motion or
> proceeding in a federal court, unless since the time of such determination there
> has been a retroactively effective change in the law controlling such issue.
> Despite such determination, however, the court in the interest of justice and for
> good cause shown, *may in its discretion grant the motion* if it is otherwise
> meritorious.

N. Y. Crim. Proc. Law § 440.20(3) (emphasis added).

Petitioner has not filed a second CPL § 440.20 motion.  The instant petition is thus a

"mixed petition," containing both exhausted claims (claims one and two) and an unexhausted

claim (claim three).  See Rhines, 544 U.S. at 271.  This Court may review and deny a mixed

petition containing both exhausted and unexhausted claims, if those unexhausted claims are

"plainly meritless."  See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78.  Petitioner's

unexhausted third claim is plainly meritless.

First, "there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." United States v. McLean, 287 F.3d 127, 136–37 (2d Cir. 2002) (quotation and citation omitted). Petitioner's sentencing claim amounts to an allegation that the state court erroneously applied state law. See Thomas v. Larkin, No. 12-CV-2899, 2013 WL 5963133, at *13 (E.D.N.Y. Nov. 7, 2013) ("[W]hether the sentencing court properly applied New York State Penal Law § 70.25 in determining that [petitioner's] sentences were consecutive rather than concurrent is not cognizable on federal habeas review."); Johnson v. New York, 851 F. Supp.2d 713, 722 (S.D.N.Y. 2012) ("Whether a sentence should run concurrently or consecutively is purely an issue of state law and is not cognizable on federal habeas review.").

In his Traverse, petitioner attempts to circumvent the cognizability issue by reframing his third claim in constitutional terms, alleging (for the first time) that the trial court's imposition of consecutive sentences was grossly disproportionate in violation of the Eighth Amendment. Reply, at 1. Petitioner's last-minute argument–also unexhausted– does not change the outcome:

> [E]ven if the Court were to consider Petitioner's allegations that the Eighth Amendment was implicated in his receipt of consecutive sentences, the result would be the same. The Eighth Amendment is only implicated in state-court sentencing if the sentence is barbaric or vastly disproportionate to the crime committed. The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence. Since the imposition of consecutive sentences, whether or not proper, is a matter of state law, the petition must be denied because the cumulative sentence imposed was not sufficient under the circumstances to implicate the Eighth Amendment.

Fulton v. Rock, No. 9:12-CV-672, 2014 WL 1794587, at *8 (N.D.N.Y. May 6, 2014) (internal quotations and citations omitted). In other words, "petitioner is not claiming that the individual sentences are disproportionate to the crimes charged. He is claiming only that the judge's imposition of consecutive terms was improper." Id. at 20. Here, it is clear that petitioner's

-23-

consecutive sentences were not imposed in violation of NYPL § 70.25(2). The County Court's

determination that the sentences were based upon separate and distinct acts was not an

unreasonable determination of the facts in light of the evidence presented at trial, which showed

that the robbery was complete when petitioner left the parking lot and he remained in possession

of the firearm thereafter. Accordingly, because petitioner's third claim is plainly meritless, I

respectfully recommend, despite petitioner's failure to exhaust that claim, that Your Honor

should dismiss it on its merits pursuant to 28 U.S.C. § 2254(b)(2).

## V. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your

Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in

its entirety. Further, because reasonable jurists would not find it debatable that petitioner has

failed to demonstrate by a substantial showing that he was denied a constitutional right, I

recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v.

McDaniel, 529 U.S. 473, 483–84 (2000).


Dated:   August 5, 2015
         White Plains, New York

Respectfully Submitted,

PAUL E. DAVISON, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Kenneth M. Karas, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  <u>See</u> <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Karas.


A copy of this Report and Recommendation has been mailed to:

Donald Blume, DIN #10-A-2213
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051-0999