UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD BLUME,

                    Petitioner,

-v-

DANIEL MARTUSCELLO, *Superintendent, Coxsackie Correctional Facility*,

                    Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

No. 13-CV-4310 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

KENNETH M. KARAS, District Judge:

Petitioner Donald Blume ("Petitioner"), proceeding pro se, files this Petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of robbery in the second degree in violation of N.Y. Penal Law § 160.10 and one count of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03. (*See* Pet. Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶ 4 (Dkt. No. 1).) Petitioner was sentenced to determinate, concurrent prison terms of 15 years, plus five years of post-release supervision for each robbery conviction, and a determinate prison term of seven years, plus five years of post-release supervision for the weapons possession conviction. (*See* Resp't's Mem. of Law in Opp'n to the Pet. for a Writ of Habeas Corpus ("Resp't's Mem.") 12 (Dkt. No. 10); *see also* May 5, 2010 Sentence Tr. ("Sentence Tr.") 16–18 (Dkt. No. 11).)[1] The weapons possession sentence was ordered to run consecutively to the robbery sentences, totaling an aggregate prison term of 22 years and 10 years of post-release

---

[1] All cited state court transcripts can be found at Dkt. No. 11.

supervision. (Pet. ¶ 3; Sentence Tr. 17.) Petitioner seeks habeas relief on the following grounds: (1) Petitioner's right to the assistance of counsel was violated when he was not represented by counsel at a preliminary hearing; (2) Petitioner was deprived of due process of law when he was denied a *Wade* hearing with respect to the victim's "identification" of Petitioner at trial; and (3) the trial court illegally sentenced Petitioner to consecutive, rather than concurrent, sentences in violation of N.Y. Penal Law § 70.25(2). (Pet. ¶ 10.) The case was referred to Magistrate Judge Paul E. Davison, who issued a thorough Report and Recommendation (the "R&R"), recommending that the Court deny the Petition. (*See* R&R (Dkt. No. 14).) Petitioner subsequently filed timely objections to the R&R (the "Objections"), advancing arguments related to his right to counsel and *Wade* hearing claims. (*See* Pet'r's Obj's to R&R ("Pet'r's Obj's") (Dkt. Nos. 17–18).) For the reasons stated herein, the Court adopts the R&R in its entirety and denies Petitioner's request for habeas relief.

## I. Background

The factual and procedural background of this case is set forth in the R&R and the Court assumes the Parties' familiarity therewith. (*See* R&R 2–9.) The Court nevertheless summarizes the relevant facts.

During the early morning of April 27, 2009, Petitioner and a group of his friends—including Fredrick Pagan ("Pagan") and Lynn Thomas ("Thomas")—decided to rob Richard Olsen ("Olsen"), a taxicab driver known to Thomas, in order to pay for drugs. (Resp't's Mem. 2.) Thomas called Olsen and asked him to pick her up at the Hemlock Ridge apartments in the Village of Liberty. (*Id.*) Olsen arrived at the location around 3:50 a.m. and Thomas and Pagan entered Olsen's minivan. (*Id.* at 2, 5.) Shortly thereafter, Petitioner opened the driver's side door of the minivan and eventually punched Olsen in the face. (*Id.* at 2, 6.) Petitioner and Pagan

2

attacked Olsen together, repeatedly punching him in the face. (*Id.* at 2.) After Olsen retrieved a gun he kept in his minivan and unsuccessfully attempted to fire it, Petitioner wrestled the gun away from Olsen, pulled him outside of the car, and struck him in the head with the gun. (*Id.* at 2–3, 6.) The attackers then fled having stolen Olsen's wallet, $88, and his gun. (*Id.* at 3.) Olsen returned to his car and called 911. (*Id.*) When Petitioner, Pagan, and Thomas returned to the rest of their group, Petitioner waived the gun in the air and stated that he had pistol-whipped Olsen. (*Id.* at 3, 7.) Because Olsen knew Thomas, and Thomas had contacted Olsen by phone, the police used Olsen's phone to locate and arrest Thomas, as well as Pagan and Petitioner on April 28, 2009. (*Id.* at 3.)

On May 1, 2009, Petitioner and Pagan were brought before Town Justice Harold Madison in the Town of Rockland Justice Court for a preliminary hearing. (May 1, 2009 Hearing Tr. ("May 1, 2009 Tr.") 1–39.) Pagan's attorney, Joel Proyect, was present, but Petitioner's attorney was not. (*Id.* at 2–3.) Because of the absence of Petitioner's attorney, Mr. Proyect suggested that the hearing be held only "with respect to Mr. Pagan." (*Id.* at 2.) The prosecutor, Mr. Farrell, agreed with that approach, indicating that "[t]he People [were] ready to proceed . . . on the . . . Fredrick Pagan portion of the hearing." (*Id.* at 3.) The court agreed to proceed in that manner. (*Id.*) Petitioner remained in the courtroom throughout Pagan's preliminary hearing, during which Olsen and a police investigator testified, each of whom was subject to cross-examination by Mr. Proyect. During Olsen's cross-examination, Mr. Proyect asked Olsen if he got a look at the assailant who struck him from the driver's side door. Olsen testified that he saw "a bald gentleman with olive [complexion] skin, and a red hoodie on his head." (*Id.* at 21.) Prompted by a follow-up question by Mr. Proyect as to what he meant by

3

"bald," Olsen stated that the attacker was "[b]ald like him," (*id.*), presumably motioning towards the Petitioner.[2]

At the conclusion of the hearing, the court mistakenly stated: "I find there's . . . reason to believe the felony was committed, and that Donald Blume and Fredrick Pagan are the ones who committed the felony, and will hold them for Grand Jury action." (*Id.* at 33.) Mr. Farrell immediately responded to correct the record and had the following exchange with the court:

| | |
|---|---|
| MR. FARRELL: | Well, I, I would ask that you give Mr. Blume the opportunity, if his attorney wishes to — |
| THE COURT: | If he wants to — |
| MR. FARRELL: | — to have a hearing. |
| THE COURT: | — attorney or give him a copy of the disk if he wants. Or we'll have him come in, we'll have another preliminary on that. |
| MR. FARRELL: | That's fair. |
| THE COURT: | Okay. Then this will — |
| MR. FARRELL: | Because he, he wasn't represented by counsel. I don't want him to be — |
| THE COURT: | Well, yeah. That, too. |
| MR. FARRELL: | — to be prejudice. So if Mr. Ferrara wants a hearing, we'll certainly set that up. |
| THE COURT: | We'll find out if he wants the hearing. If he want, if he wants it then. We'll have — |
| MR. BLUME: | Well, I, I would like to have a hearing, Your Honor. |
| THE COURT: | You talk to your attorney, and we certainly will have it. |

---

[2] The transcript does not indicate where Olsen motioned. Petitioner asserts that "the witness pointed straight at [P]etitioner" when asked to describe the baldness of the attacker. (*See* Reply Mem. of Law 10 (Dkt. No. 13).)

(*Id.* at 33–34.) Before the proceeding ended, Mr. Farrell again asked the court to "let me know if

Mr. Ferrara wishes a prelim, we'll set that up next week." (*Id.* at 35.)

Later that day, Petitioner's counsel wrote a letter to the court to explain his absence. His

letter indicated his belief that Petitioner had not yet received his preliminary hearing:

> I visited my client around 4:15 p.m. this afternoon and learned that he was
> in court for a preliminary hearing today. I apologize for not being present, but the
> fax I received scheduled the matter for May 7, 2009 at 2:30 p.m. . . .
>
> I was able to reach Mr. Proyect at about 5:00 p.m. today. Based upon that
> conversation, *I do not believe that either Mr. Farrell or the court considers my*
> *client to have had a preliminary hearing.*
>
> I will try to contact Mr. Farrell on Monday morning. Until then, however,
> I wish to confirm that my client's case remains on the court's calendar for May 7,
> 2009 at 2:30 p.m.

(Decl. in Opp'n to the Pet. for a Writ of Habeas Corpus ("Steward Decl.") Ex. H, at RA-3 (Dkt.

No. 9) (emphasis added).) A grand jury voted an Indictment against Petitioner on May 6, 2009

before Petitioner had a preliminary hearing. (Steward Decl. Ex. A ("Record on Appeal") 5–9;

*see also* Reply Mem. of Law ("Reply Mem.") 12 (Dkt. No. 13).) Petitioner's Indictment charged

him with two counts of robbery in the second degree and one count of criminal possession of a

weapon in the second degree. (Record on Appeal 6–8.)

On May 15, 2009, the prosecution filed a Notice of Intent to Offer Identification

Evidence pursuant to N.Y. Crim. Proc. Law § 710.30, which stated that on April 27, 2009, Olsen

was shown three different photo arrays by the New York State Police and had been able to

identify Thomas and Pagan as participants in the robbery, but not Petitioner. (*Id.* at 21.) Given

Olsen's identification of Thomas and Pagan, a *Wade* hearing was held on September 18, 2009 in

Sullivan County Court with respect to Pagan's and Thomas's objections to the admissibility of

Olsen's pretrial identifications of the two.[3] Pagan, Thomas, and Petitioner were all present at the hearing. (*See* Sept. 18, 2009 Hearing Tr. 1, 14.) Prior to the start of the *Wade* portion of the hearing, the court stated that there would be no *Wade* hearing "[w]ith respect to [Petitioner] . . . because the witness [was] not able to identify that defendant and the People will not be asking the witness to identify that defendant." (*Id.* at 14.) The prosecution confirmed that it would "[a]bsolutely not" ask Olsen to identify Petitioner at trial and the hearing proceeded without objection from Petitioner's counsel. (*Id.*)

After trial, the jury convicted Petitioner of two counts of robbery in the second degree, in violation of N.Y. Penal Law §§ 160.10(1), (2)(a), and one count of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(3). (*See* Nov. 17, 2009 Trial Tr. 74.) Petitioner was sentenced to determinate, concurrent prison terms of 15 years, plus five years of post-release supervision for each robbery conviction, and a determinate prison term of seven years, plus five years of post-release supervision for the weapons possession conviction. (Sentence Tr. 16–18.) The weapons possession sentence ran consecutively to the robbery sentences. (*Id.* at 17.)

Petitioner, through his counsel, timely filed an appeal in the Appellate Division, Third Department. (*See* Steward Decl. Ex. F.)[4] On August 11, 2011, Petitioner filed a pro se

---

[3] "The purpose of a *Wade* hearing is to determine before trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) (alteration and internal quotation marks omitted).

[4] Prior to sentencing, Petitioner, through counsel, filed a motion to vacate the jury's verdict pursuant to N.Y. Crim. Proc. Law § 330.30. (*See* Steward Decl. Ex. B.) Petitioner filed an affidavit to supplement the arguments raised by his attorney. (*See* Steward Decl. Ex. D.) In his affidavit, Petitioner made a number of arguments, including that he was denied his right to counsel at a preliminary hearing. (*Id.* at 2–3.) On April 1, 2010, the county court denied Petitioner's motion, including his claim that he was denied his right to counsel. (*See* Steward Decl. Ex. E ("April 1, 2010 § 330.30 Order") 6.)

supplemental brief before the Third Department arguing, among other things, that: (1) he was denied his constitutional right to the assistance of counsel when he appeared without counsel at the May 1, 2009 hearing, at which Olsen was improperly allowed to view Petitioner; and (2) the trial court failed to conduct a *Wade* hearing with respect to Olsen's "description" testimony. (Steward Decl. Ex. G ("Pro Se Appellant Br.") 1–6.) On February 9, 2012, the Third Department affirmed Petitioner's judgment of conviction. *See People v. Blume*, 937 N.Y.S.2d 724 (App. Div. 2012). Petitioner, through his counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, seeking review of most of his arguments, including, as pertinent here: (1) whether Petitioner "was denied his right to a fair trial based upon the circumstances of his co-defendant's preliminary hearing;" (2) whether Petitioner "should have been placed in front of the victim without his lawyer present at the preliminary hearing;" and (3) "[w]hether a *Wade* hearing should have been held." (Steward Decl. Ex. K ("Appl. for Leave") at unnumbered 1–2.) The Court of Appeals denied Petitioner leave to appeal. *See People v. Blume*, 973 N.E.2d 207 (N.Y. 2012).

On January 31, 2013, Petitioner filed a motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.20. (*See* Steward Decl. Ex. N.) Petitioner argued that he was illegally sentenced to consecutive terms of imprisonment in violation of N.Y. Penal Law § 70.25(2), which requires imposition of concurrent sentences if the offenses were committed through "a single act." (*Id.* at 2–5.) *See also* N.Y. Penal Law § 70.25(2). Judge Labuda of the Sullivan County Court denied Petitioner's motion. (*See* Steward Decl. Ex. P.) Petitioner did not seek leave to appeal the denial of his § 440.20 motion to the Appellate Division.

As noted above, on or around June 20, 2013, Petitioner filed the Petition. (*See* Dkt. No. 1.) Magistrate Judge Davison issued the R&R on August 5, 2015, recommending that this Court

7

deny Petitioner's request for relief and dismiss the Petition in its entirety. (*See* R&R 1.)

Petitioner subsequently filed the Objections. (*See* Dkt. Nos. 17–18.)

## II. Discussion

### A. Applicable Law

#### 1. Standard of Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)-(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party timely submits objections to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In contrast, "[a] district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y.S. Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)), *aff'd sub nom. Hochstadt v. N.Y.S. Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).

8

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

### 2. Habeas Corpus

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks

9

omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the California Supreme Court to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833–34 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

10

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds, Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the court to the claim's federal nature,"

11

*Daye*, 696 F.2d at 192, and the state courts are "apprised of both the factual and the legal premises of the claim [the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original) (internal quotation marks omitted); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Daye*, 696 F.2d at 194. However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3 (S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4

12

(S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006);
*Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004). For example, in New York a
defendant may challenge the conviction based on matters not in the record that could not have
been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek
collateral review of claims that could have been raised on direct appeal and were not, *see id.*
§ 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7
(S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised
in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial
record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."),
*adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

In addition, New York permits only one application for direct review. *See* N.Y. Comp.
Codes R. & Regs. tit. 22, § 500.20(a)(2); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006)
("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."). "New
York procedural rules bar its state courts from hearing either claims that could have been raised
on direct appeal but were not, or claims that were initially raised on appeal but were not
presented to the Court of Appeals." *Sparks*, 2012 WL 4479250, at *4. Accordingly, in those
situations a petitioner no longer has any available state court remedy, and the unexhausted claims
are therefore deemed exhausted, but procedurally barred. *See Carvajal v. Artus*, 633 F.3d 95,
104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately
present his federal claim to the state courts so that the state courts would deem the claim
procedurally barred, we must deem the claim procedurally defaulted." (alteration and internal
quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the
reality that deeming an unpresented claim to be exhausted is "cold comfort"). A dismissal of a

13

habeas petition on such grounds is a "disposition . . . on the merits." *Aparicio*, 269 F.3d at 90.
"An applicant seeking habeas relief may escape dismissal on the merits of a procedurally
defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that
he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104
(quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("[A]
federal court will not entertain a procedurally defaulted constitutional claim in a petition for
habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that
the petitioner "is actually innocent of the underlying offense . . . .").

### B. Application

#### 1. Right to Assistance of Counsel

In his Petition, Petitioner alleged that his right to assistance of counsel was violated
because he was not represented by counsel at the May 1, 2009 preliminary hearing. (*See* Pet.
¶ 10(a)). Petitioner objects to Magistrate Judge Davison's conclusion that the record "clearly
reflects" that the May 1, 2009 preliminary hearing "was conducted *only as to defendant Pagan*,"
and not Petitioner, (R&R 16–17; *see* Pet'r's Obj's 3–10), and further claims that "whatever [the
hearing] is labeled," the hearing was a "critical stage" of Petitioner's case to which his right to
counsel attached, (Pet'r's Obj's 9; *see also id.* at 6).

Petitioner raised this claim on direct appeal, (*see* Pro Se Appellant Br. 2–4), and the
Appellate Division addressed it in conjunction with Petitioner's "remaining contentions" which
were "examined and found to be lacking in merit," *Blume*, 937 N.Y.S.2d at 727. The claim was
included in Petitioner's application for leave to appeal to the New York Court of Appeals, (*see*
Appl. for Leave at unnumbered 2), and, accordingly, the claim is exhausted.

14

"[T]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)); *see also Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) ("[C]learly established law applies [the right to the assistance of counsel] to all 'critical' stages of a criminal prosecution . . . ."). A preliminary hearing is a "critical stage" at which the right to counsel attaches. *See Coleman v. Alabama*, 399 U.S. 1, 8–10 (1970) ("Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution."); *see also Meadows v. Kuhlmann*, 812 F.2d 72, 77 (2d Cir. 1987) ("The [Supreme] Court [has] held that the Sixth Amendment right to counsel applied to a preliminary hearing granted by state law."). Therefore, Petitioner is correct that "[t]he question becomes whether or not the preliminary hearing [P]etitioner attended was both his and his co[-]defendant['s], or only his co[-]defendant's." (Pet'r's Obj's 4). Review of the record confirms that the hearing was held *only* for Petitioner's co-defendant Pagan and *not* for Petitioner.

As detailed above, throughout the hearing counsel and the court were careful to ensure that the hearing was conducted for Pagan only, not Petitioner. Specifically, before the taking of testimony, Pagan's attorney informed the court that Petitioner's attorney was not present and recommended that the hearing be held "with respect to Mr. Pagan" only. (May 1, 2009 Tr. 2.) After a brief discussion as to how Petitioner could contact his lawyer, the court asked counsel present if they were ready to proceed. (*Id.* at 2–3.) In response, the prosecutor indicated that "[t]he People [were] ready to proceed, Judge, on the . . . Fredrick Pagan portion of the hearing" and the court agreed to proceed in that manner. (*Id.* at 3.) By the end of the hearing all parties understood that Petitioner had not yet had his own preliminary hearing. It is true that at the

15

conclusion of the hearing, the court mistakenly said that there was "reason to believe the felony

was committed, and that Donald Blume and Fredrick Pagan [were] the ones who committed the

felony, and [I] will hold them for Grand Jury action." (*Id.* at 33.) However, the prosecutor

immediately corrected the mistake and asked the court to give Petitioner an opportunity to have

his own preliminary hearing. (*Id.*) The court agreed and reiterated that they would "find out if

[Petitioner's counsel] wants the hearing." (*Id.*) Petitioner stated that he wished to have a

preliminary hearing and the court responded that "we certainly will have it." (*Id.* at 34.)

Additionally, later that day, Petitioner's counsel wrote a letter to the court that explained his

absence and also stated that, based on his conversation with Pagan's counsel, "I do not believe

either [the prosecutor] or the court considers my client to have had a preliminary hearing."

(Steward Decl. Ex. H, at RA-3.)[5] He also stated that he wished to have Petitioner's preliminary

hearing on May 7, 2009. (*Id.*) This evidence establishes that the hearing on May 1, 2009 was

only Pagan's preliminary hearing and not a "'one-for-two' deal," (Pet'r's Obj's 7), as Petitioner

contends.[6]

  According to Petitioner, the "fact that the court held both defendants over to the grand

jury proves that the hearing was . . . for both of them." (Pet'r's Obj's 4; *see also id.* at 5, 7.) In

New York, the "primary purpose" of a preliminary hearing is to "determine whether there exists

---

[5] Due to a conflict of interest, John Kelly eventually replaced Petitioner's attorney, and the author of that letter, Mr. Ferrara, as Petitioner's counsel. (*See* May 19, 2009 Hearing Tr. 2.) Mr. Kelly had the same understanding as Mr. Ferrara with respect to the hearing held on May 1, 2009. At a bail hearing weeks later, he remarked that "[his] client was summoned . . . for a felony hearing. His attorney was not notified and, therefore, he did not proceed with the felony hearing." (May 29, 2009 Hearing Tr. 4.)

[6] The fact that the court referred to the case as "the Matter of Donald Blume and Fredrick Pagan" when swearing in Olsen as a witness, (*see* Pet'r's Obj's 5; *see also* May 1, 2009 Tr. 3) does not alter the Court's conclusion.

16

reasonable cause to hold a defendant in custody pending action by a Grand Jury." *Vega v. Bell*, 393 N.E.2d 450, 453 (N.Y. 1979); *see also* N.Y. Crim. Proc. Law § 180.10(1) ("[T]he primary purpose of the [preliminary] proceedings upon [a] felony complaint is to determine whether the defendant is to be held for the action of a grand jury with respect to the charges therein."). As detailed above, however, immediately after the court mistakenly said that it would be holding Petitioner for Grand Jury action, the prosecutor corrected the mistake and ensured that an additional preliminary hearing would be scheduled for Petitioner if desired.

Petitioner also argues that the May 1, 2009 hearing should be deemed his preliminary hearing because he had a "statutory right to a preliminary hearing" and one was never held before he was indicted on May 6, 2009. (Pet'r's Obj's 4, 7.) New York law is clear, however, that "the State, by presenting the case to a Grand Jury in the first instance, may bypass the preliminary hearing stage entirely." *People v. Hodge*, 423 N.E.2d 1060, 1063 (N.Y. 1981); *see Holland v. Allard*, No. 04-CV-3521, 2005 WL 2786909, at *4 (E.D.N.Y. Oct. 26, 2005) ("[E]ven though a defendant has the right to a prompt hearing, that right is illusory, as the People can (and frequently do) avoid the hearing by presenting the charge to a grand jury." (alteration and internal quotation marks omitted)); *Malsh v. Hanslmaier*, No. 94-CV-687, 1996 WL 204347, at *9 (N.D.N.Y. Apr. 11, 1996) ("[T]he State, by presenting the case to a Grand Jury in the first instance, may bypass the preliminary hearing stage entirely." (quoting *Hodge*, 423 N.E.2d at 1063)), *aff'd*, 102 F.3d 69 (2d Cir. 1996). (*See also* Pet'r's Obj's at 4 ("It is true that the People may submit a case to the grand jury despite the pendency of a preliminary hearing, and an indictment will supersede any prior proceeding in the lower court.").)[7] Because no preliminary

_____

[7] Despite conceding this point, Petitioner contends that "the instant case presents a set of facts which questioned the prosecution's ability to go to the grand jury without first affording the defendant the right to exercise his statutory right to a felony examination." (Pet'r's Obj's 4–5.)

17

hearing was required, the fact that the Grand Jury indicted Petitioner before his scheduled hearing does not support Petitioner's argument that the May 1, 2009 hearing was his own preliminary hearing.[8]

Petitioner further contends that, even if the May 1, 2009 hearing was not his preliminary hearing, his appearance in the same courtroom with the victim was a "critical stage" in his criminal case to which his right to counsel attached. (*See* Pet'r's Obj's 6, 9.) "The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends . . . upon an analysis [of] 'whether potential substantial prejudice to defendant's rights inheres in the confrontation and the ability of counsel to help avoid that prejudice.'" *Coleman*, 399 U.S. at 9 (alteration omitted) (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)); *see also Zeigler v. New York*, 948 F. Supp. 2d 271, 292 (N.D.N.Y. 2013) ("What makes a stage critical is what shows the need for counsel's presence." (alteration omitted) (citing *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008))); *United States v. Ramirez*, 903 F. Supp. 587, 590 n.6 (S.D.N.Y. 1995) (defendant has "the right to the advice of counsel at 'critical stages' of the proceeding, defined as 'any stage of the prosecution, formal or informal, in court or out, where counsel's

---

But the "overwhelming weight of authority is strongly indicative and supportive of the concept that the option as to the method of prosecution when alternatives are provided rests solely with the . . . prosecuting official and that the right to such an option may not be abridged by either the defendant or the court." *People v. McDonnell*, 373 N.Y.S.2d 971, 974 (Sup. Ct. 1975). "[The prosecutor] could decide on having a preliminary examination conducted by a magistrate or having the facts presented directly to a Grand Jury." *Id.* (citing *People ex rel. Willett v. Quinn*, 135 N.Y.S. 477 (App. Div. 1912)).

[8] To the extent Petitioner argues that being indicted before his scheduled preliminary hearing "violated [his] right to due process," (Pet'r's Obj's 7), this unexhausted claim would fail because "[t]here is no federal constitutional right to a preliminary hearing," *Caswell v. Racetti*, No. 11-CV-153, 2012 WL1029457, at *5 (W.D.N.Y. Mar. 26, 2012) (citations and internal quotation marks omitted); *see also Strong v. Mance*, No. 09-CV-878, 2010 WL 1633398, at *7 (N.D.N.Y. Apr. 2, 2010) (same).

18

absence might derogate from the accused's right to a fair trial.'" (quoting *Wade*, 388 U.S. at 226, 228)). Petitioner argues that the prejudice created from his presence in the courtroom with Olsen was the opportunity provided to Olsen to enhance his description of his attacker, from a man wearing a red hooded sweatshirt (his description immediately after the robbery), to a man wearing "a red sweatshirt, bald, olive complexion, big chest," (his description at trial). (Pet'r's Obj's 8; *see also* Reply Mem. 4–5.)

"[I]t is difficult to ascertain what benefit would have accrued to [Petitioner], or what detriment he might have avoided, if counsel had been available to [Petitioner]," *United States v. Kon Yu-Leung*, 910 F.2d 33, 40 (2d Cir. 1990), while he sat in the courtroom during Pagan's preliminary hearing. Olsen still would have been able to observe Petitioner even if counsel was present. Moreover, despite his absence at the hearing, Petitioner's counsel still had the ability to cross-examine Olsen at trial and probe the difference between his initial description of the attacker as merely a man with a red hooded sweatshirt and his more robust description at trial. Additionally, Petitioner does not explain why Petitioner's presence at trial—as opposed to the pre-trial hearing—would not have provided Olsen with the same opportunity to observe Petitioner and supplement his initial description of his attacker. Though Petitioner also complains of an inability to cross-examine Olsen at the hearing regarding his "description" of his attacker, (*see* Pet'r's Obj's 6), such an argument is, at bottom, an argument that Petitioner had the right to have his own preliminary hearing (a right, as discussed above, that did not exist), and does not explain what would have been different had counsel been present for what was, in reality, only Pagan's preliminary hearing.

Because the May 1, 2009 hearing was neither Petitioner's preliminary hearing nor otherwise a "critical stage" of the criminal process, Petitioner did not have the right to be assisted

by counsel and the Appellate Division's decision rejecting Petitioner's right to counsel claim was not contrary to, or an unreasonable application of, federal law. *See Epps*, 687 F.3d at 50.[9]

### 2. *Wade* Hearing

Next, Petitioner argues that his due process rights were violated when the trial court failed to hold a *Wade* hearing with respect to Olsen's "identification" of Petitioner. (*See* Pet. ¶ 10(b); Reply Mem. 12–15.) Petitioner objects to Magistrate Judge Davison's conclusion that any habeas review of Petitioner's challenge to the trial court's failure to conduct a *Wade* hearing is barred on procedural grounds. (*See* R&R 18–21; Pet'r's Obj's 10–11.)

Petitioner presented his *Wade* hearing argument on direct appeal. (*See* Pro Se Appellant Br. 5–6.) The Appellate Division rejected the argument on the grounds that Petitioner failed to object contemporaneously to the trial court's decision not to hold a *Wade* hearing. *See Blume*, 937 N.Y.S.2d at 726 (noting that Petitioner "voiced no objection to County Court's ruling" that it "would not be conducting a *Wade* hearing with respect to [Petitioner]"). Specifically, the Appellate Division's ruling rested on N.Y. Crim. Proc. Law § 470.05(2)—also known as New York's "contemporaneous objection" rule. *See Lewis v. Lee*, No. 11-CV-478, 2015 WL 5751396, at *8 (S.D.N.Y. Sept. 29, 2015). The contemporaneous objection rule provides that a

---

[9] Even if Petitioner established that his right to counsel attached at the hearing, his claim would still fail because the denial of counsel would have been harmless error. "The Supreme Court has held that for denial of counsel during pretrial or preliminary proceedings, '[t]he test to be applied is whether the denial of counsel . . . was harmless error.'" *Jones v. Spitzer*, No. 01-CV-9754, 2003 WL 1563780, at *13 (S.D.N.Y. Mar. 26, 2003) (alterations in original) (quoting *Coleman*, 399 U.S. at 11), *adopted by* 2005 WL 167605 (S.D.N.Y. Jan. 25, 2005), *aff'd sub nom. Jones v. Cuomo*, 254 F. App'x 6 (2d Cir. 2007). Specifically, Petitioner must demonstrate that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *see also Wood v. Ercole*, 644 F.3d 83, 93–94 (2d Cir. 2011) (noting that *Brecht* harmless error review governs habeas cases). As discussed above, and below in the context of Petitioner's *Wade* hearing claim, Petitioner cannot demonstrate that he was prejudiced by Olsen's ability to observe Petitioner at the hearing without Petitioner's counsel present.

20

question of law is properly presented in an appeal "when a protest thereto was registered, by the

party claiming error, at the time of such ruling or instruction or at any subsequent time when the

court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2);

*see also Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011) ("The relevant part of the

contemporaneous objection rule . . . provides that . . . New York appellate courts will review

only those errors of law that are presented at a time and in a manner that reasonably prompted a

judge to correct them during criminal proceedings."); *Whitley v. Ercole*, 642 F.3d 278, 286 (2d

Cir. 2011) ("[N.Y. Crim. Proc. Law § 470.05(2)] has been interpreted by New York courts to

require, 'at the very least, that any matter which a party wishes' to preserve for appellate review

be 'brought to the attention of the trial court at a time and in a way that gave it the opportunity to

remedy the problem and thereby avert reversible error.'" (alterations omitted) (quoting *People v.

Luperon*, 647 N.E.2d 1243, 1246–47 (N.Y. 1995))).

> As the Second Circuit has explained:

> the Supreme Court reaffirmed the well-settled principle that when a "state prisoner
> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice as a result
> of the alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice."

*Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722,

750 (1991)). Nevertheless, "procedural default in the state court will only bar federal habeas

review when 'the last state court rendering a judgment in the case clearly and expressly states

that its judgment rests on a state procedural bar,'" and, therefore, a federal habeas court must

"determine[] whether the state court judgment rests on such an independent and adequate

ground." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "If a state court's disposition

of [a] federal claim rests upon a state-law ground that is independent of the federal question and

adequate to support the judgment, the [habeas court] will not review that claim." *Fernandez v. Sheahan*, No. 12-CV-2735, 2015 WL 4771958, at *8 (E.D.N.Y. Aug. 11, 2015) (internal quotation marks omitted). A state-law ground is "adequate only if it is firmly established and regularly followed by the state." *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) (alterations and internal quotation marks omitted).

"The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground" ordinarily barring habeas review. *Moore v. Conway*, No. 08-CV-6390, 2010 WL 4117411, at *7 (W.D.N.Y. Oct. 20, 2010), *aff'd*, 476 F. App'x 928 (2d Cir. 2012); *see also Downs*, 657 F.3d at 104 ("[The Second Circuit] ha[s] held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *Ortiz v. Bradt*, No. 13-CV-5420, 2013 WL 5775695, at *2 (E.D.N.Y. Oct. 25, 2013) ("It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review."). Because the Appellate Division expressly relied on § 470.05(2) to dispose of Petitioner's *Wade* hearing claim, this Court is procedurally barred from addressing the merits of this claim. *See Whitley*, 642 F.3d at 293 (concluding that the petitioner's claim "was not properly raised before the trial court in accordance with New York's contemporaneous objection rule and, accordingly, [was] procedurally barred"); *Harris v. Lempke*, No. 09-CV-5193, 2015 WL 2060811, at *9 (S.D.N.Y. May 4, 2015) ("Since the Appellate Division's decision rests on [the contemporaneous objection rule, which] is

22

independent of the federal question and adequate to support the judgment, federal habeas corpus review of [petitioner's claim] . . . is foreclosed.").[10]

Because "the Appellate Division properly relied on a procedural bar, [P]etitioner would have to show that grounds exist for reaching the merits notwithstanding that procedural bar." *Ortiz*, 2013 WL 5775695, at *2. As noted, to overcome this default on state procedural grounds, Petitioner must show "'cause for the default and prejudice' or . . . that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90). Here, Petitioner did not attempt to demonstrate his actual innocence, and there is nothing in the record that convinces the Court that Petitioner is actually innocent of the crimes for which he was convicted. Petitioner has argued, however, that sufficient cause exists for his failure to contemporaneously object to his lack of a *Wade* hearing—namely that the prosecutor assured Petitioner that he would not offer identification testimony at trial but "in a surprise move elicited a description from the complaining witness," (Reply Mem. 7–8), that was "absolutely and critically needed" to convict Petitioner, (Pet'r's Obj's 10–11). As noted by Magistrate Judge Davison, Petitioner's attempt to demonstrate cause and prejudice and the merits of Petitioner's *Wade* claim suffer from the same defect: both conflate Olsen's description testimony with an in-court identification. (*See* R&R 20–21.)

Critically, Olsen could not make an in-court *identification* of Petitioner, (Nov. 10, 2009 Trial Tr. ("Nov. 10, 2009 Tr.") 43–44), but rather was only able to *describe* the assailant at trial

---

[10] Federal review is barred "even where," as here, "the state court has also ruled in the alternative on the merits of the federal claim." *Spurgeon v. Lee*, No. 11-CV-600, 2015 WL 4610021, at *5 (E.D.N.Y. July 31, 2015) (citing *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).

23

as a "gentleman in a red sweatshirt, bald, olive complexion, big chest," (*id.* at 41). Specifically,

Olsen testified at trial during his direct examination as follows:

> Q    There's blows coming from the back?
> A    As well as the guy with the red sweatshirt that hit me in the face.
> Q    Now that person, were you able to get a look, a good enough look at him to identify him?
> A    The gentleman with the red sweatshirt?
> Q    That's correct.
> A    No.

(*Id.* at 43–44.) Indeed, as Petitioner's counsel emphasized during his summation, the "[o]ne

thing [that] is a hundred percent certain" is that "[Olsen] did not and could not identify

[Petitioner]." (Nov. 16, 2009 Trial Tr. ("Nov. 16, 2009 Tr.") 226.) Because the prosecution did

not elicit an identification of Petitioner during Olsen's testimony, Petitioner's argument that his

failure to object should be excused because of the prosecution's "'below-the-belt' strategy,"

(Pet'r's Obj's 10), and "surprise move elicit[ing] a description," (Reply Mem. 8), must fail

because the prosecution's direct examination of Olsen was consistent with the representations

made to Petitioner at the September 18, 2009 hearing—that Olsen could not, and would not,

identify Petitioner at trial.[11]

Petitioner also has failed to demonstrate actual prejudice suffered due to the court's

decision not to conduct a *Wade* hearing and the subsequent use of Olsen's "description"

testimony at trial. Petitioner's counsel challenged the accuracy of Olsen's description of his

attacker and reaffirmed Olsen's inability to identify Petitioner as the attacker on summation. For

example, Petitioner's counsel questioned Olsen as to how he could know that the attacker was

---

[11] For the same reason, Petitioner's argument that the "assurance from the prosecution that the witness would not identify [P]etitioner at trial," (Pet'r's Obj's 10), transforms the present case into "the small category of cases . . . in which the exorbitant application of a generally sound rule renders the state ground inadequate to bar consideration of the federal constitutional claim," *Cotto*, 331 F.3d at 239 (internal quotation marks omitted), is rejected.

bald given that he also testified that the attacker was wearing a sweatshirt with the hood up.

(Nov. 10, 2009 Tr. 114.) Counsel's cross-examination also addressed prior testimony indicating

that the nature of the beating made it difficult for Olsen to remember certain details. (*Id.* at 118–

20.) During his summation, Petitioner's counsel reiterated that "[t]he witness, Mr. Olsen, did not

and cannot ID [Petitioner]." (Nov. 16, 2009 Tr. 219; *see also id.* at 226 ("One thing is a hundred

percent certain. [Olsen] did not and could not identify [Petitioner]. Couldn't. Didn't.").)

Because Petitioner's *Wade* hearing claim is procedurally defaulted and Petitioner has

demonstrated neither sufficient cause for the default and prejudice, nor the actual innocence

necessary to overcome the default, Petitioner's claim is unreviewable by this Court.[12]

Even if Petitioner's *Wade* claim was not procedurally defaulted, the claim would fail on

the merits. "The purpose of a *Wade* hearing is to determine before the trial whether *pretrial*

*identification procedures* have been so improperly suggestive as to taint an *in-court*

*identification.*" *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) (emphases added) (alteration

omitted) (quoting *Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979)); *Carter v. Wooghter*, No.

10-CV-2143, 2015 WL 1516667, at \*2 n.3 (S.D.N.Y. Apr. 3, 2015) (same); *Quinney v. Conway*,

784 F. Supp. 2d 247, 261 (W.D.N.Y. 2011) (same). At no point prior to or at trial did Olsen

---

[12] Moreover, it is not true, as Petitioner asserts, that Olsen's description testimony was "absolutely and critically needed" to convict Petitioner and that without Olsen's "description" testimony, the only evidence against Petitioner would have been co-defendant Thomas's testimony. (*See* Pet'r's Obj's 11.) As summarized by the county court in its decision denying Petitioner's § 330.30 motion to vacate the verdict, (*see* April 1, 2010 § 330.30 Order 3, 5), there was ample evidence linking Petitioner to the crime, including the fact that after being apprehended the following day, Petitioner's knuckles were red and he had a wound on his hand consistent with the victim's testimony that Petitioner blocked the hammer on the victim's gun during the struggle for the gun, as well as testimony from other members of the group the night of the robbery to the effect that Petitioner suggested robbing Olsen, that Petitioner returned from Olsen's minivan carrying a gun, a wallet, and an envelope of money, and that Petitioner admitted to beating and robbing Olsen.

identify Petitioner. Where there is no identification either before or at trial, no *Wade* hearing is

necessary. *See, e.g.*, *Washington v. Walsh*, No. 10-CV-7288, 2015 WL 4154103, at *7

(S.D.N.Y. July 9, 2015) (concluding "that [the] [p]etitioner has failed to demonstrate the need for

a *Wade* hearing" because "there [was] no evidence that any police-arranged identifications were

introduced—directly or indirectly—at trial"); *Hankins v. Smith*, No. 03-CV-5404, 2008 WL

4601000, at *13 (S.D.N.Y. Oct. 15, 2008) ("[S]ince [the witness] did not identify the petitioner

as a perpetrator of the charged crimes during the police-arranged lineup, there was no reason for

the trial court to conduct a *Wade* hearing to explore whether [the witness] fell prey to suggestive

behavior by law enforcement officials at the lineup."); *People v. Kitchings*, 754 N.Y.S.2d 730,

730–31 (App. Div. 2003) (finding the court's denial of a *Wade* hearing as "entirely proper"

where "there w[as] no eyewitness testimony by any person who had previously identified the

defendant as being the individual who committed the crime charged"). Accordingly, the trial

court's decision not to conduct a *Wade* hearing could not be "contrary to, or involve[] an

unreasonable application of[] clearly established Federal law as determined by the Supreme

Court of the United States." *Epps*, 687 F.3d at 50.[13]

---

[13] Even assuming, arguendo, that Olsen's "description" of Petitioner qualified as an in-court identification, Petitioner's claim would still fail. "Because the Supreme Court has explicitly declared that there is no per se constitutional rule compelling an evidentiary hearing with regard to witness identification of an accused," and has not "clearly articulated the circumstances under which a pre-trial hearing may be constitutionally necessary, the [trial court's] denial of [the petitioner's *Wade* hearing claim], in itself, could not have been contrary to nor constituted an unreasonable application of clearly established federal law in this matter." *Alvarez v. Fischer*, 170 F. Supp. 2d 379, 384 (S.D.N.Y. 2001) (citing *Watkins v. Sowders*, 449 U.S. 341 (1981)); *see also Kelly v. Lee*, No. 11-CV-3903, 2014 WL 4699952, at *9 (E.D.N.Y. Sept. 22, 2014) ("[T]he Supreme Court has stated that there is no per se constitutional rule requiring a pre-trial *Wade* hearing." (citing *Sowders*, 449 U.S. at 349)); *cf. Goico v. David*, No. 04-CV-1090, 2008 WL 163594, at *5 (N.D.N.Y. Jan. 16, 2008) (state's refusal to hold a pre-trial *Rodriguez* hearing on the identification of the petitioner "could not have been contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court"). Moreover, Petitioner's counsel had the opportunity to challenge Olsen's "description"

26

### 3. Unlawful Sentence

Petitioner's final claim is that the trial court's sentencing order requiring that the seven-year prison term and five-year post-release supervision term for his weapons possession conviction be served consecutively with his sentences for the robbery convictions violates N.Y. Penal Law § 70.25(2). (Pet. ¶ 10(c).) Petitioner's Objections do not include specific objections to the R&R's findings with respect to this claim.[14] Accordingly, the Court will set aside the R&R's findings as to the unlawful consecutive sentences claim only if it is "clearly erroneous or contrary to law." *Adams*, 855 F. Supp. 2d at 206. Because the R&R properly applies federal law, the Court adopts its findings with respect to this claim.

As Magistrate Judge Davison concluded, Petitioner's unlawful sentencing claim is unexhausted due to his failure to seek leave to appeal the trial court's denial of his § 440.20 motion to the Appellate Division. (*See* R&R 21–22.) *See also* N.Y. Crim. Proc. Law § 450.15(2) (providing for discretionary appeal of denial of § 440.20 motion). However, because § 440.20(3) provides the trial court with discretion to hear a § 440.20 motion "in the interest of

_____

on cross-examination and "[f]ederal constitutional law does not warrant granting a habeas petition on the basis of denial of a pre-trial hearing where [the] [p]etitioner had the opportunity to cross-examine the witness on the identification issue and to argue in summation that there might have been a problem with the identification procedure." *Andrews v. LeClaire*, 709 F. Supp. 2d 269, 279 (S.D.N.Y. 2010) (internal quotation marks omitted).

[14] While Petitioner does attempt to "object[] to all the Magistrate's findings," (Pet'r's Obj's 2), which would presumably include the findings with respect to the consecutive sentences claim, Petitioner does not put forward any specific arguments addressing the claim. "Although the objections to a report and recommendation of a pro se party should be accorded leniency, even a pro se party's objections . . . must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Chiari v. N.Y. Racing Ass'n*, 972 F. Supp. 2d 346, 351 (E.D.N.Y. 2013) (internal quotation marks and italics omitted); *see also Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 310 (E.D.N.Y. 2012) ("[E]ven where an objection has been filed pro se, an objection to a report and recommendation in its entirety does not constitute a specific written objection within the meaning of Rule 72(b)." (alterations and internal quotation marks omitted)).

justice and for good cause shown," even if a prior motion already determined the same issue, the claim is not procedurally barred and thus remains unexhausted. *See McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 338 (W.D.N.Y. 2011) (holding that, because "there is no time limit within which to file [a § 440.20] motion, and more than one motion to set aside a sentence is permissible," the petitioner could raise his Eighth Amendment claim in a § 440.20 motion and so the "claim is [not] procedurally defaulted"); *Reyes v. Phillips*, No. 02-CV-7319, 2005 WL 2173812, at *5 (S.D.N.Y. Sept. 6, 2005) (finding that the "possibilit[y] of successive § 440[.20] motions" meant that the petitioner "ha[d] not clearly lost the opportunity to" raise his Eighth Amendment claim and thus "a finding of exhaustion and procedural bar" was not justified).

Though unexhausted, Magistrate Judge Davison correctly reviewed the unlawful sentencing claim because the claim is plainly meritless. (R&R 22–24.) *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005) (a district court should not grant a stay allowing a petitioner to present his unexhausted claims to a state court where the unexhausted claims are "plainly meritless"); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The claim is plainly meritless because "[w]hether the sentencing court properly applied New York State Penal Law § 70.25 in determining that [Petitioner's] sentences were consecutive rather than concurrent is not cognizable on federal habeas review." *Thomas v. Larkin*, No. 12-CV-2899, 2013 WL 5963133, at *13 (E.D.N.Y. Nov. 7, 2013); *see also Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Johnson v. New York*, 851 F. Supp. 2d 713, 722 (S.D.N.Y. 2012) ("Whether a sentence should run concurrently or consecutively is purely an issue of state law and is not cognizable on federal habeas review.").

28

Accordingly, the Court adopts the R&R's recommendation with respect to the unlawful sentencing claim and dismisses the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## III. Conclusion

The Court hereby adopts Magistrate Judge Davison's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the case.

SO ORDERED.

DATED:     March __14__, 2016
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29